**IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF OKLAHOMA**



JAN 1 5 2010

WILLIAM B. GUTHRIE
Clerk, U.S District Court
By_____
Deputy Clerk

PHYLLIS JEAN COLLINGS, )
)
           Plaintiff, )
)
v. )    Case No. CIV-08-381-RAW
)
MICHAEL J. ASTRUE, )
Commissioner of Social )
Security Administration, )
)
           Defendant. )

## REPORT AND RECOMMENDATION

Plaintiff Phyllis Collings (the "Claimant") requests judicial
review of the decision of the Commissioner of the Social Security
Administration (the "Commissioner") denying Claimant's application
for disability benefits under the Social Security Act. Claimant
appeals the decision of the Administrative Law Judge ("ALJ") and
asserts that the Commissioner erred because the ALJ incorrectly
determined that Claimant was not disabled. For the reasons
discussed below, it is the recommendation of the undersigned that
the Commissioner's decision be REVERSED and REMANDED for further
proceedings.

### Social Security Law and Standard of Review

Disability under the Social Security Act is defined as the
"inability to engage in any substantial gainful activity by reason
of any medically determinable physical or mental impairment. . ."
42 U.S.C. § 423(d)(1)(A). A claimant is disabled under the Social

Security Act "only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy. . ." 42 U.S.C. §423(d)(2)(A). Social Security regulations implement a five-step sequential process to evaluate a disability claim. *See*, 20 C.F.R. §§ 404.1520, 416.920.[1]

Judicial review of the Commissioner's determination is limited in scope by 42 U.S.C. § 405(g). This Court's review is limited to two inquiries: first, whether the decision was supported by substantial evidence; and, second, whether the correct legal

---

Step one requires the claimant to establish that he is not engaged in substantial gainful activity, as defined by 20 C.F.R. §§ 404.1510, 416.910. Step two requires that the claimant establish that he has a medically severe impairment or combination of impairments that significantly limit his ability to do basic work activities. 20 C.F.R. §§ 404.1521, 416.921. If the claimant is engaged in substantial gainful activity (step one) or if the claimant's impairment is not medically severe (step two), disability benefits are denied. At step three, the claimant's impairment is compared with certain impairments listed in 20 C.F.R. Pt. 404, Subpt. P, App. 1. A claimant suffering from a listed impairment or impairments "medically equivalent" to a listed impairment is determined to be disabled without further inquiry. If not, the evaluation proceeds to step four, where claimant must establish that he does not retain the residual functional capacity ("RFC") to perform his past relevant work. If the claimant's step four burden is met, the burden shifts to the Commissioner to establish at step five that work exists in significant numbers in the national economy which the claimant - taking into account his age, education, work experience, and RFC - can perform. Disability benefits are denied if the Commissioner shows that the impairment which precluded the performance of past relevant work does not preclude alternative work. *See generally*, Williams v. Bowen, 844 F.2d 748, 750-51 (10th Cir. 1988).

2

standards were applied.  Hawkins v. Chater, 113 F.3d 1162, 1164 (10th Cir. 1997)(citation omitted).   The term "substantial evidence" has been interpreted by the United States Supreme Court to require "more than a mere scintilla.  It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  Richardson v. Perales, 402 U.S. 389, 401 (1971) (quoting Consolidated Edison Co. v. NLRB, 305 U.S. 197, 229 (1938)).   The court may not re-weigh the evidence nor substitute its discretion for that of the agency.  Casias v. Secretary of Health & Human Servs., 933 F.2d 799, 800 (10th Cir. 1991). Nevertheless, the court must review the record as a whole, and the "substantiality of the evidence must take into account whatever in the record fairly detracts from its weight."  Universal Camera Corp. v. NLRB, 340 U.S. 474, 488 (1951); *see also*, Casias, 933 F.2d at 800-01.

### Claimant's Background

Claimant was born on October 25, 1942 and was 65 years old at the time of the entry of the ALJ's decision.  Claimant completed her education through the twelfth grade and attended three years of college.  Claimant has worked in the past as a customer service representative and computer software specialist.  Claimant alleges an inability to work beginning May 1, 2004 due to arthritis, deterioration of spinal cartilage, diabetes, high blood pressure,

and asthma.

## Procedural History

On April 21, 2005, Claimant protectively filed for disability insurance benefits under Title II (42 U.S.C. § 401, *et seq.*) of the Social Security Act. Claimant's application was denied initially and upon reconsideration. On June 11, 2007, a hearing was held before ALJ Jodi B. Levine in Oklahoma City, Oklahoma. By decision dated February 29, 2008, the ALJ found that Claimant was not disabled during the relevant period. On August 12, 2008, the Appeals Council denied review of the ALJ's decision. As a result, the decision of the ALJ represents the Commissioner's final decision for purposes of further appeal. 20 C.F.R. §§ 404.981, 416.1481.

## Decision of the Administrative Law Judge

The ALJ made his decision at step four of the sequential evaluation. He determined that while certain of Claimant's medical conditions were severe, Claimant did not meet a listing and retained the residual functional capacity to perform her past relevant work as a customer service representative and software specialist.

## Errors Alleged for Review

Claimant asserts the ALJ committed error in failing to make the requisite findings regarding the demands of Claimant's past

relevant work.

## Review of Decision

Claimant asserts the ALJ did not make the required findings to ascertain whether she could perform her past relevant work. Between August 21, 2000 and May of 2004, Claimant was attended primarily by Dr. Gary Dickinson. Claimant was treated by Dr. Dickinson for diabetes and peripheral neuropathy. (Tr. 218-220).

On April 2, 2003, Claimant was diagnosed with sciatic neuralagia in her left leg after suffering lower back pain which radiated down her hip to her leg. (Tr. 187). Dr. Dickinson referred Claimant to Dr. Donald Adams for pain management. (Tr. 185).

On July 30, 2003, Claimant saw Dr. Adams. X-rays revealed Claimant was experiencing arthritic changes in the lumbar spine area. An MRI showed multi-level disc bulging and facet arthrosis. Claimant also had a grade I degenerative spondylolisthesis at L5-S1 and mild narrowing of the left intervertebral foramen at L5-S1. Claimant complained of a continuous, aching pain with a hurting sensation that radiated into her hip, thigh, leg, and foot. Claimant told Dr. Adams that she recently was stumbling over her left foot while ambulating and has numbness and tingling. Bending forward significantly aggravated her pain, while resting on her right side alleviated the pain. (Tr. 147). Claimant's pain would

5

improve after epidural steroid injections but the pain would return. (Tr. 139-145).

On June 17, 2004, Claimant was attended by Dr. Dickinson. She continued to experience back pain after four epidural steroid injections and the use of a TENS unit. Dr. Dickinson prescribed medication for her condition. (Tr. 174).

At a September 4, 2004 visit to Dr. Dickinson, Claimant complained of back pain, right leg pain, swelling in her feet, and numbness in both legs at night. Dr. Dickinson diagnosed Claimant with degenerative disk disease, osteoarthritis in the knee, venous stasis, hypertension, and diabetes. (Tr. 173).

Claimant returned to Dr. Adams with complaints of gradually increasing pain. Her pain level was estimated as 7 out of 10 and she took 3 Lortab per day. Dr. Adams noted straight leg raising was positive on the left, Claimant had tenderness throughout her spine, no sensation on the bottom of her feet due to neuropathy. Dr. Adams diagnosed Claimant with left L5 radiculopathy, multilevel degenerative disc disease, lumbosacral mechanical dysfunction, and diabetic neuropathy. (Tr. 138).

On October 29, 2004, Dr. Adams determined Claimant was suffering from facet denervation and performed a rhiztomy at L3-L4 on the right. (Tr. 137).

On December 6, 2004, Claimant saw Dr. Dickinson and had

6

undergone a nerve block. She was "doing well." (Tr. 172). On April 6, 2005, Claimant complained of numbness in her feet. (Tr. 171).

On July 11, 2005, Claimant underwent a consultative examination by Dr. Paul M. Dichter. Dr. Dichter found Claimant suffered from diabetic neuropathy in her foot. She also had decreased sensation in her left leg at L4-L5 and S1 distribution. Claimant was positive for straight leg raising and, as a result, Dr. Dichter found Claimant suffered from lumbar dysfunction. (Tr. 150-151).

Dr. Dickinson continued his diagnosis of degenerative disk disease, diabetes, and fibromyalgia throughout visits in 2005 and 2006. (Tr. 165-170). On October 3, 2007, Claimant saw Dr. Semira Charboneau. Claimant was found to suffer from diabetes mellitus, type 2 with peripheral neuropathy and hypoglycemic episodes, hyperlipidemia, asthma, history of esophagitis, hypertension, hypothyroidism, irritable bowel syndrome, back pain, depression, lower extremity edema, diarrhea, and shoulder pain. (Tr. 301-303). Claimant continued to suffer from back pain and gastrointestinal problems throughout the record in 2007 and June of 2008. (Tr. 296-299).

In his decision, the ALJ found Claimant suffered from the severe impairments of degenerative disk disease, osteoarthritis,

diabetes mellitus, hypertension, hyperlipidemia, asthma, and obesity. (Tr. 23). He concluded Claimant retained the RFC to lift and carry 20 pounds occasionally and 10 pounds frequently, stand for 6 hours out of an 8 hour workday, walk for 6 hours, and sit for six hours. He limited Claimant to bending and stooping occasional and that she must be allowed to sit and stand as needed in her work area. (Tr. 27). The ALJ found Claimant could perform her past relevant work as a customer service representative and software specialist. (Tr. 30).

The evaluation at step four has been determined to be comprised of three phases. In the first phase, the ALJ must evaluate a claimant's physical and mental RFC. In the second phase, an ALJ must determine the physical and mental demands of a claimant's past relevant work. In the third and final phase, the ALJ determines whether the claimant has the ability to meet the job demands found in phase two despite the mental and physical limitations found in phase one. Bowman v. Astrue, 511 F.3d 1270, 1272 (10th Cir. 2008)(citations omitted).

In this case, Claimant is correct that the ALJ did not specifically delineate the three phases of step four. However, he is not required to adhere to such a rigid recitation. He must simply make the required specific factual findings required at each phase supported by substantial evidence. Winfrey v. Chater, 92

F.3d 1017, 1023 (10th Cir. 1996).

With regard to the first phase, the ALJ evaluated Claimant's RFC and recognized certain specific limitations. In the second phase, the ALJ did not ascertain the demands of Claimant's specific past relevant work. While he questioned the vocational expert concerning the exertional level of the jobs of both a customer service representative and software specialist, the ALJ did not go further and evaluate Claimant's recognized restrictions in light of the demands of these jobs. Specifically, the ALJ made no finding regarding whether Claimant's past relevant work allowed for the restriction of alternating sitting and standing. Claimant testified these jobs required her to sit longer than she was able to do in light of her impairments. (Tr. 109, 323). On remand, the ALJ shall make the required findings.

## Conclusion

The decision of the Commissioner is not supported by substantial evidence and the correct legal standards were not applied. Therefore, the Magistrate Judge recommends for the above and foregoing reasons, the ruling of the Commissioner of Social Security Administration should be **REVERSED** and the case be **REMANDED** for further proceedings consistent with this Report and Recommendation. The parties are herewith given ten (10) days from the date of the service of these Findings and Recommendations to

file with the Clerk of the court any objections, with supporting brief. Failure to object to the Findings and Recommendations within ten (10) days will preclude appellate review of this decision by the District Court based on such findings.

DATED this _15th_ day of January, 2010.

KIMBERLY E. WEST
UNITED STATES MAGISTRATE JUDGE